IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEONARD BRIDGES, | : | No. 3:10cv1065 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| ASHLAND BOROUGH and | : | |
| MARK O'HEARN (Individually | : | |
| and as a Police Officer for | : | |
| Ashland Borough), | : | |
| Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **MEMORANDUM**

Before the court for disposition is the motion for partial summary judgment filed by Defendant Ashland Borough and Defendant Mark O'Hearn. The matter has been fully briefed is ripe for disposition.

**Background**

Plaintiff suffers from an array of medical problems and is totally disabled due to diabetes, heart problems, end stage renal disease and kidney failure. (Doc. 30-3, Pl. Dep. at 41 - 42). He and his fiancee, Laurie Grose, have leased and lived in the same residence since July 2008. (Doc. 29, Def. Stmt. of Mat. Facts ("SOF") ¶ 4).[1] Grose works as an in-home caretaker for plaintiff through the Anthracite Regional Center for Independent Living, an area independent living company. (Id. ¶ 5).

On September 30, 2009, a dispute arose between Grose and

---

[1] For this brief factual background section, we will cite to the defendant's statement of material facts as to which no genuine issue remains to be tried. (Doc. 29). The facts which we cite to are generally admitted by the plaintiff. (See Doc. 31, Pl.'s Ans. to SOF).

plaintiff.  (Id. ¶¶ 7-9).  Grose called 911 to report that plaintiff had a sledgehammer and a butcher knife and that he was going to damage her car and smash her toes.  (Id. ¶ 15).  Defendant Mark O'Hearn, a patrolman with the Ashland Borough Police Department, reported to the residence. (Id. ¶ 16).  When he arrived, O'Hearn drew his service weapon and ordered plaintiff to relinquish the sledgehammer and butcher knife and to lay face down on the ground.  (Id. ¶ 18).  O'Hearn arrested plaintiff.  Grose told O'Hearn that plaintiff's left arm had restrictive movement; thus, O'Hearn handcuffed plaintiff in front with two sets of handcuffs linked together instead of cuffing him behind his back with one set of handcuffs. (Id. ¶ 19).  After defendants arrested and processed plaintiff, they allowed him to return to Grose.  (O'Hearn Dep. 29).

On the next day, plaintiff and Grose had another dispute.  (SOF ¶ 22).  Plaintiff struck Grose in the hip and leg area with a metal cane.  (Id. ¶¶ 23-25).  Then plaintiff himself called the police.  (Id. ¶ 26).  When the police arrived, Hearn proceeded to plaintiff's bedroom where he was receiving kidney dialysis.  (O'Hearn Dep. 49).  Plaintiff had not taken his prescribed anti-depressant medication on that day or the day before.  (SOF ¶ 32).  He screamed at O'Hearn and Grose who repeatedly asked him to calm down.  (Id. ¶ 35).  The parties dispute what happened next. Defendants claim that plaintiff swung his fist at Defendant O'Hearn.  (SOF ¶ 38).  Plaintiff claims that he never took a swing at O'Hearn and that such an act would have been impossible while he was hooked to the dialysis machine.  (Pl. Cntrstmt. of Mat. Facts ("CSOF") ¶ 39).  Defendants indicate that O'Hearn then informed plaintiff the he was under arrest and injured his arm will trying to handcuff him.  (SOF ¶¶ 40-41).  Plaintiff maintains that O'Hearn never advised plaintiff that he was under arrest and

2

never tried to handcuff him.  (CSOF ¶ 39).  Rather, according to plaintiff, O'Hearn grabbed him from behind and twisted his arm up behind his head until the arm bones snapped and cracked. (Id.)   Plaintiff asserts that O'Hearn intentionally broke his arm. (Id. ¶ 40).

Based upon these facts, the plaintiff instituted the instant case by filing a complaint on May 19, 2010.  (Doc. 1).  Plaintiff filed an amended complaint on July 21, 2010, which asserts three causes of action.  (Doc. 6). Count 1 is brought pursuant to 42 U.S.C. § 1983 and for violation of the plaintiff's Fourth Amendment rights.  (Doc. 6). He asserts that the excessive and unreasonable force used by Defendant O'Hearn constituted an unreasonable search and seizure.  Count II asserts a state law cause of action for assault and Count III alleges a state law cause of action for battery.   Counts I is asserted against both defendants and Counts II and III are against Defendant O'Hearn in his individual capacity.   Plaintiff seeks compensatory damages and attorneys' fees.  He also seeks punitive damages on Counts II and III.

Defendants move for summary judgment on Count I with respect to Ashland Borough and for summary judgment with respect the punitive damages claims in Counts II and III.  The matter has been fully briefed, bringing the case to its present posture.

**Jurisdiction**

As this case is brought pursuant to 42 U.S.C. § 1983, the court has jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  We  have supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Standard of review**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. International Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248. A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**Discussion**

Defendants raise two issues in their motion for partial summary judgment. First they argue that Defendant Ashland cannot be held liable as a matter of law. Second, they argue that judgment should be granted to them on the issue of punitive damages. We will address these issues *in seriatim*.

**I. Defendant Ashland**

Defendants argue that Ashland Borough cannot be held liable for the alleged constitutional violations in the instant case. Generally, section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of the United States Constitution by state officials. See 42 U.S.C. § 1983. In pertinent part, section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.

When suing a municipality, such as Defendant Ashland Borough, for a civil rights violation, a plaintiff cannot rely on respondeat superior liability. Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). Rather, in order to hold a municipality liable, a plaintiff must establish that the municipality's policy or custom caused the constitutional violation. Id. at 694.

The law provides that a custom or practice for Monell liability may be demonstrated where a decision-maker issues an official proclamation or decision. Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990).

In the absence of such an official proclamation:

> [t]here are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy." Bryan County, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Id. Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " Id. at 417-18, 117 S.Ct. 1382 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); see also Berg, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

Natale v. Camden Cnty Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (footnote omitted) .

Thus, the acts of a government employee can be deemed "policy or custom" where: 1) a policy exists and the employee merely carries out that policy; 2) the employee is the final policymaker himself; and 3) the need for a policy is obvious that the policymaker can be said to be deliberately indifferent for not implementing a policy.

Defendant Ashland argues that none of these categories apply and thus it cannot be held liable for Defendant O'Hearn's actions. Plaintiff, on the other hand, argues that O'Hearn was the policymaker for Ashland regarding the executionof patrolman duties and arrests in this specific instance. Therefore, Ashland can be held responsible for his actions.

Specifically, plaintiff argues: "Here, O'Hearn, the policymaker, made the decisions at issue with regard to Plaintiff. Therefore, Ashland may also be held liable. Accordingly, because evidence exists from which a reasonable jury could conclude O'Hearn was the policymaker and that his actions violated Plaintiff's constitutional rights, summary judgment would be inappropriate." (Doc. 32, Pl. Br. at 11). After a careful review, we disagree.

The record reveals that at the time of the incident, Ashland Borough employed three full-time police officers, Patrolman O'Hearn, Sergeant Michael Aulenbach and Police Chief Adam Bernodin. (Doc. 30-5, O'Hearn Dep. at 12). The Borough also employed approximately fifteen part-time police officers. (Id.) Plaintiff's position is that as the only patrolman for Ashland, O'Hearn is the sole policymaker for carrying out patrolman duties and arrests.

The determination of whether an official is an final policy maker is a question of state law. See Santiago v. Warminster Twp., 629 F.3d 121, 134 n.11 (3d Cir. 2010). Santiago is very similar to the instant case. The plaintiff asserted that the police chief was the final policymaker for purposes of Monell liability. The court held, however, that as a matter of Pennsylvania state law, a township Police Chief is not a final policymaker. Id. The court examined Pennsylvania law, the Second Class Township Code, and found that the law vested authority and supervision over a township's police officers with the township board of supervisors. Id.; 53 PA. STAT. ANN. § 66902. The court further noted that the United States Supreme Court has "forbidden courts from 'assuming that municipal policymaking authority lies somewhere other than where the applicable law purports to put it.'" Id. quoting City of St. Louis v. Praprotnik, 485 U.S. 112,

125 n.1, 126 (1988).

In the instant case, the plaintiff asserts that a police patrolman of a borough is a final policymaker official. The Pennsylvania Borough Code, however, indicates that in a borough "[t]he mayor of the borough shall have full charge and control of the chief of police and the police force[.]" 53 PA. STAT. § 46121. Accordingly, as a matter of Pennsylvania state law a patrolman is not a final policymaking official with regard to police affairs. That final policymaking authority is vested in the mayor. In the instant case, the plaintiff presents no evidence that the mayor instituted a policy that violated the plaintiff's rights. Accordingly, the borough cannot be held liable for the alleged constitutional violations and the court will grant summary judgment to Defendant Ashland Borough.

**II. Punitive Damages**

Plaintiff's amended complaint seeks punitive damages against Defendant O'Hearn. Defendants move for summary judgment on the issue of punitive damages. After a careful review, the motion will be denied.

As a general matter, because the court is sitting in diversity, the substantive law of Pennsylvania, including the law regarding punitive damages, shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). In Pennsylvania, " '[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.'" Hutchinson ex rel. Hutchinson v. Luddy, 870 A.2d 766, 770 (Pa. 2005) (quoting Feld v. Merriam, 485 A.2d 742, 747 (Pa.1984)). Since "punitive damages are penal in nature," they are available "only in cases where the defendant's actions are so

outrageous as to demonstrate willful, wanton or reckless conduct." Id. In determining whether to award punitive damages, "one must look to 'the act itself together with all the circumstances including the motive of the wrongdoers and the relations between the parties.'" Feld, 485 A.2d at 748. A party may be liable for punitive damages by acting with "reckless indifference." Medvecz v. Choi, 569 F.2d 1221 (3d Cir.1977). As such, "a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." Hutchinson, 870 A.2d at 772.

Defendant argues that plaintiff cannot demonstrate that he was motivated by evil motive or intent because the record indicates that he was merely interceding in a violent domestic dispute between plaintiff and Grose. The court disagrees. Viewing the facts in the light most favorable to the nonmoving party it appears that O'Hearn can be found to have violently and unnecessarily used physical force against plaintiff while he was attached to a dialysis machine. He grabbed the plaintiff's arm and twisted it up behind plaintiff's back and neck so that it gave way to his force and snapped. He took these action despite his awareness of plaintiff's problems with his arms, from the previous visit to plaintiff's residence. The jury may view this evidence and decide that punitive damages are appropriate against Defendant O'Hearn.

**Conclusion**

In conclusion, the defendants' motion for partial summary judgment will be granted in part and denied in part. The motion will be granted with respect to Defendant Ashland Borough, and the motion will be denied with

respect to the punitive damages claim.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEONARD BRIDGES,** | : | No. 3:10cv1065 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **ASHLAND BOROUGH and** | : | |
| **MARK O'HEARN (Individually** | : | |
| **and as a Police Officer for** | : | |
| **Ashland Borough),** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## **ORDER**

**AND NOW**, to wit, this 18th day of November 2011, the defendants' motion for partial summary judgment (Doc. 27) is **GRANTED** with regard to Defendant Ashland Borough and **DENIED** in all other respects.

                                            **BY THE COURT:**

                                            **s/ James M. Munley**
                                            **JUDGE JAMES M. MUNLEY**
                                            **United States District Court**